We've previously given the order of argument, which I assume was, if not satisfactory, is. It's fine. We can deal with it. All right. Good morning. May it please the Court, I am Robert Tolan, attorney for Champion Homes. There are a lot of issues in this case, and I've tried to focus on the narrowest issue that will get us most directly to the conclusion. On the question of jurisdiction, that issue is our contention that the union cannot petition this Court for review because it never raised any issue it's trying to raise in this Court before the National Labor Relations Court. Apparently, the union was happy with the administrative law judge's decision. The Court could have filed exceptions, but it did not. At the NLRB level, if the union was not happy with the way the board changed the ALJ's decision, it could have filed a petition for reconsideration with the board, but it never did. And that result is controlled by the Supreme Court's decision in Wilkie v. Romero v. NLRB, where the Court wrote, and I quote, ''However, the court of appeals was without jurisdiction to consider that question. The issue was not raised during the proceedings before the board. Thus, judicial review is barred by Section 10e of the Act, which provides that no objection that has not been urged before the court shall be considered before the board shall be considered by the court.'' Counsel? Yes. Does that same result pertain when the outcome is favorable to the party? The union is contending that the outcome was unfavorable to it at the board level. The outcome was favorable to the union at the ALJ level. The board reversed the ALJ with regard to the State court injunction. The NLRB reversed the ALJ. So if there was anything that is going to permit the union to file a petition for review, it has to have something to do with the board's reversal of the ALJ on the State court injunction issue. And while the union has argued that there were – there are some things that aggrieve it, and we disagree that they're true aggrievement, nevertheless, even assuming there were, since that was an unfavorable – since the union contends that was an unfavorable result for it at the NLRB level, the union was obligated to file a petition for reconsideration. And indeed, the next quote I was going to give you from the Supreme Court's decision in Wilkie is this, Wilkie could have objected to the board's decision in a petition for reconsideration or rehearing. The failure to do so prevents consideration of the question by the courts. So, counsel, just so I understand your argument, you're arguing that the union should have filed a motion for reconsideration to preserve that issue? Correct. Because Section 10E of the National Labor Relations Board says that no issue may be presented to the court of appeal if it had not been presented to the board. And the Wilkie case says, okay, if the board does something that a party hadn't anticipated, so the party had no opportunity to file exceptions to the ALJ's decision, that's okay. But nevertheless, if the board does something that a party had not anticipated at the board level and that party feels aggrieved by it, that party must file a motion for reconsideration with the board, or it loses the right to bring the board to the court of appeals and the court of appeals is without jurisdiction. That's the Wilkie-Romero case. What case is that? That's Wilkie v. Romero Framing v. NLRB, 456 U.S. 645, and it's a 1982 case, and the pages I was quoting from are 656 to 666. Is that, was that in your brief? Let me, yes. 665 to 666. And the last paragraph that the Supreme Court gave that I want to quote as well, because it is so on point with your question, Judge Rawlinson, is this. Because the court of appeals lacks jurisdiction to review objections that were not urged before the board, we do not reach the question. Instead, we vacate that portion of the court of appeals judgment and remand with instructions to dismiss. I understand your argument if there were no objection to the board, but your argument is if there's no opportunity to make objection to the board because, for instance, the ALJ ruled in the party's favor, then there must be a motion for reconsideration filed to preserve that. And I understood you to say that Wilkie makes that distinction as well? Yes. Yes. It's, the ALJ rules in favor of the union, so the union doesn't have any need to file exceptions. I filed exceptions to lots of things, and on this point, on one point in particular, the board reverses the ALJ. Now the union hadn't filed objections because they were happy with the ALJ decision, but now the board has reversed the ALJ and the union is no longer happy, it says, with the board's reversal. What is the union supposed to do before it can come to the court of appeals? The Supreme Court says the union is supposed to file a motion for reconsideration, and that's based on Section 10e of the National Labor Relations Act. Now, I'm going to move on to the merits. On the merits, one of the elements of Section 8A1, unlawful interference, is concerted activity. Excuse me. The issue is concerted activities. One of the elements is that the employer must have known that the activity was concerted. That's the board standard in Myers Industries. Here, the only evidence cited by the board is that Mr. Rivas told Mr. Stewart that 50 to 60 employees agreed with the letter he posted. Evidence that Rivas said 50 to 60 employees felt the same way was not evidence that Stewart, to whom he was speaking, knew that 50 to 60 employees felt the same way. Stewart testified he didn't believe Rivas. He said he'd been told by several employees he'd been told that several employees had complained about the letter and thought it and he, Stewart, thought it was tearing down the employees. Stewart's testimony was uncontradicted either by direct or circumstantial evidence. Now, I understand that this element of a violation may seem troublesome because it is subjective, but that's the standard that the board articulated in Myers Industries. The board said, quote, once the activity is found to be concerted, an 8A1 violation will be found if, in addition, the employer knew of the concerted nature of the employee's activity. Once the board announces a standard, it must apply it, unless it announces that it is going to change the standard. That's the Supreme Court's rule in Allentown Max Sales and Services v. NLRB, which is 522 U.S. 359. Here, the board did not change the standard. No one asked it to. Neither the general counsel nor the union. And no one has come into this Court and argued that the standard is wrong. Any party would first have to present that argument to the board. No one did. Let me go quickly to one other separate ground why the decision should not be enforced on the merits. The ALJ found that the discharge was motivated by the posting of the letter. The LRB did not even address that issue, did not address that issue in its review. But the ALJ found that the discharge was motivated by the posting of the letter. The ALJ made so many mistakes in that evaluation that factoring them together into the analysis, as the case law says, the result is not supported by substantial evidence on the record considered as a whole. The errors were, first, the ALJ discredited the Gayle Lucas' notes on the grounds they'd been written in contemplation of litigation. There is no basis in the record to conclude that they had been written in contemplation of litigation. Indeed, the record shows that they were responsive to a question that some higher management had asked about whether there had been any mention of the union in connection with Mr. Rivas' – any mention of a union in connection with Mr. Rivas' events. The second, the ALJ said that Champion defended itself by contending that it had terminated Rivas for terminating other employees. But the ALJ refused to consider that evidence because he said Champion was contending that the intimidation was posting the letter. That particularly galls me because I presented the case, and I did not contend that posting the letter constituted intimidation. I contended that a host of other things constituted intimidation, but it wasn't posting the letter. And if the ALJ says that's our contention and then looks at the evidence to determine whether that contention is valid or not, he's not looking at the evidence to determine whether our true contention is or is not supported by the evidence. And then the third point is the ALJ found that the injunction papers did not allege threats of bodily injury when they did. And this Court can look at the papers in the State court as well as the ALJ did and observe that those papers do indeed allege bodily injury. It was such a poor decision that one cannot say that it is supported by substantial evidence on a consideration. Fundamental injustice being what? In connection with the discharge or in connection with the motivation issue? Yeah. The fundamental injustice is that one of the required elements of an 885 violation, that the discharge was motivated by unlawful activity, is not support. So the ALJ found that the discharge was motivated by a very, what is the meritorious motivation here? Well, we contended that the discharge was motivated by Mr. Revis's threatening his supervisor in their conversation. Now, but we don't have to say that. Conversation about? I'm sorry? Conversation about? Conversation about all his complaints. He had been terminated, but the supervisor was reviewing it and he was going over all of it. And in the course of that conversation, he leaned over and he looked Mr. Revis in the eye and said, you better be careful, this is the most important decision you're ever going to make in your life. And Mr. Stewart testified he thought the guy had a gun in his briefcase and he felt intimidated. And that was on top of the fact that Gail Lucas and the other guy, Donnie, had reported that in their earlier conversation, Revis had stood up and stood over them and threatened them as well. It was on the basis of those threats that Mr. Stewart terminated Mr. Revis. But mind you, we don't have to convince the Board or anybody that that's the basis on which he was terminated. All we have to do is convince them that he was not terminated for protected activity. The ALJ said he was terminated for posting a letter. And the evidence that the ALJ cited in support of that conclusion is what consists of the three errors that I listed in combination, I submit, they create a record that does not contain substantial evidence supporting the ALJ's conclusion. And I'll reserve the rest of my time. I have a question. Counsel? Yes. For me? You represent Champion Home Builders, is that correct? Correct. When you come back on rebuttal, could you please point me to where in your briefs you cited this Wilkie case that you've now cited to the court? And when you come back, could you also specifically point us to the language in Wilkie that you have relied upon in your representation that a motion for reconsideration must be filed? Okay. Morning, Your Honors. David Rosenfeld on behalf of Local 1109. I was not present, unfortunately, this morning because I was arguing another case. May I reserve a few minutes for rebuttal on just the remedy issue? We normally don't do that. Fine. Let me address the Tenney issue, because counsel is just wrong. In Wilkie and Romero, no one raised the issue before we need the timer. Let's start again. All right. Let me address Wilkie and Romero. You're representing? I represent Carpenter's Local 1109, the union. We need 15 minutes. Yes, we need 15 minutes. All right. Let me address the Tenney issue first, because the Board has raised it. In Wilkie and Romero, the issue which was before the Court had been raised by nobody and was not considered by the Board. This Court, in three cases, all of which we've cited in our brief, has held that where any party raises the issue before the Board, then any party may petition for review and challenge that in a co — in the Court. Those cases distinguish Wilkie. In fact, several of them expressly refer to Wilkie and point out how in Wilkie the issue was never raised. In our case, before this Court, this issue that we have before the Court was raised in several fashions, and the Board had a full opportunity to consider them. First of all, the employer raised objections, filed an appeal. Secondly, the general counsel filed a brief in support of its position. Thirdly, the dissent addressed the issues. And fourthly, the Board addressed the issues. So if you take a look at Local 512, Service Employees Local 399, and Gardner Mechanical, all of them expressly point out that where the issue is, in fact, addressed by the Board under any of those circumstances, any party, and that's a language which you find in Local 399, may petition for review. So there is no Tenney issue here in light of those three cases. And one of the cases that Gardner cites is a D.C. Circuit case called Washington Association for TV v. FCC. It's 712 Fed Seconds 677. That's kind of the case that expresses the reasons why that doctrine is so, and it relates largely to futility in that having addressed these issues, the Board having addressed them, there's nothing more we could have done. And in Wolke, just to complete that, in Wolke, because the issue wasn't raised by anybody, the Court said, well, somebody should have filed a motion for reconsideration. And the Court said, here, the issues were fully addressed, at least the remediate issues that I want to address. I don't intend to address in this argument the merits of the case, except to point out that what Mr. Tolan has failed to point out to you is the administrative law judge expressly found that Mr. Rivas was called into Mr. Scott's office and asked, did you post that letter? Mr. Rivas denied it at first. Mr. Scott said, well, workers told him you did it, and handed him his paycheck. Now, there's no way that whatever else happened could have been the motivating factor for the discharge if Mr. Scott had the paycheck ready to hand him because he was upset because Mr. Rivas was posting this notice, which was concerted activity. I want to address the remedy issue because it's a very important remedial jurisdictional issue, and it's complicated, but in some sense simple. One can understand this because what I'm addressing is a very narrow issue of the question of whether Champion Homes could go to court and get an order that said Mr. Rivas cannot come to the workplace, and he can't come within 50 or 100 yards of the plant either way. We did not challenge and do not challenge any court or the remainder of the temporary restraining order or the three-year injunction that prohibited Mr. Rivas from harassing, threatening, doing anything else. We don't care about that. Our position is that the injunction to the extent it prevented him from working and prevented him from communicating with other workers is preempted. The first point about this is a very simple one, and that is what the Board ignores is the ILA v. Davis case, which expressly says that preemption is a jurisdictional question. It's not a choice of law question. The Court said Curry, meaning an earlier Supreme Court case, made it clear that when a State proceeding or regulation is claimed to be preempted by the NRA under Garmin – Garmin, of course, being the most famous of the preemption cases – the issue is a choice of form rather than a choice of law question. As such, it is a question whether the State or Board has jurisdiction. So if we determine that that language in the injunction about coming to work was preempted because it interfered with the Board processes, it's a jurisdictional question. That's what ILA stands for, and that's, I think, an unquestioned principle in this case, then. The second point – But, counsel, so what does that mean? When you say it's a jurisdictional question, what are you saying? I'm saying that either the State court had to determine that it lacked jurisdiction to issue that injunction at some point or could make that decision, or when the Board determines that that injunction was improper, the State court never had jurisdiction to issue that injunction. It lacked jurisdiction because it interfered with the Board's remedy. It's a simple jurisdictional question. And if it's jurisdictional, you can't cut the issue, as the Board has done, by saying, well, it only becomes jurisdictional at some point in the process. In this case, it's five years or six years after the injunction is issued when the Board issues its decision. It is jurisdictionally lacking in the State court of an issue from the beginning because it's a jurisdictional question, not a choice of law or any other question. Counsel, may I ask you, what if the NLRB had never filed a charge? What would have happened to the jurisdictional issue? I'm going to rephrase that. There's a difference between a charge and a complaint. In this case, the region issued a complaint against Champion Homes in September of 1999, which was about nine months after this incident, asserting that the injunction was preempted. If the Board had never issued that complaint, then I wouldn't have this argument before this Court. Well, what does that do to your argument that it's Board ab initio, then, if it's only preempted as of the point when the Board issues its complaint? For the following reason, that the Board's doctrine in Lowman Plaza since 1991 has been that in these circumstances, the State law complaint, and I want to be very careful how I express this, the Board's position in Lowman Plaza since 1991 has been that when we have this kind of preempted lawsuit, called a footnote 5 Bill Johnson's lawsuit, it is preempted from when the complaint is issued by the Board in September of 1999. That should have been the result in this case. That would have been consistent with Lowman's Plaza. I happen to think that doctrine is wrong for the reason that I've expressed, that it was a jurisdictional question, but the point is it was preempted. Because it was jurisdictional, it should have gone back to the time that the complaint was filed. Now ---- But that's a different argument. That's a different argument than saying it's preempted ab initio. That's true. But the Board has taken the position that this is a result of the Sears case, which makes it more complicated. In Sears, you had a situation where an employer sought an injunction against a trespass, and the union played a game of not going to the labor board, of not filing a charge of the labor board to test the jurisdictional question. So the Supreme Court was faced with this conundrum. What do we do in a circumstance where the union's conduct may well be, is arguably protected by the National Labor Relations Act, but the union refuses to invoke that process to determine the jurisdictional question, i.e., going to the labor board who should make that decision? And the Supreme Court said in that kind of a situation where the union declines to go to the labor board, then the State court has jurisdiction. What's at stake here? What's at stake, Your Honor, is that Jose Rivas, a worker, is fired because he posted notice and the company punishes him by going to court. That injunction, which isn't clear in the record, was a heavy burden on him because, among other things, those kinds of injunctions prohibit you from owning guns. Now, I'm not a gun advocate, but there's serious disabilities, and ultimately what's at stake in these cases is if the individual resists the injunction and hires attorneys, there are attorney fees. That becomes an issue. Is that what we're talking about here with respect to whether the preemption when the State court proceeding was preempted? Are we talking about attorney's fees? No, I think in response to the question that Judge Farris has asked in every one of these cases, what we're talking about is the proposition the employer should not be allowed to have the advantage of punishing a worker with a lawsuit that turns out to be preempted for months or years until the labor board issues a decision. The employer should post a notice that says, I was wrong from the beginning, the traditional board notice, my lawsuit was preempted, I should not have filed it, or at least I should have withdrawn it after the board completed its initial investigation and issued complaint, because otherwise, again, this is a precedential effect of this case for this local union as well as a lot of other unions, where it's a free pass to an employer or a union, because a union can do the same thing, to file a lawsuit and it doesn't become preempted under the board's doctrine until the board decides the case and then all you've got to do is withdraw. So it's the coercive effect of that lawsuit for the whole extent of the proceeding? Right. And there's no law on this? There is the Lowman's Plaza case that says that these kinds of lawsuits are generally preempted after the union filed a charge the day that Mr. Revis appeared in court. It took the region 8 or 9 months to investigate it and consider what to do, and finally issued a complaint on the lawsuit issue. But as you remember from the record, what happened was they had no trouble finding that the discharge was unlawful and issued a complaint within a couple of months on that. So the company gets this freedom of having this injunction, having Revis's head, and although not in this case, we did cite a state court case. The difficulty is the timing. At the time the company – the time the letter was posted, was the man a member of a union? No. Was there a union – was this a union shop? No. The union was on the outside hoping to get in, but it wasn't in. Isn't that so? No. This was not a union matter. This was concerted activity which the National Labor Relations protects even if the union isn't involved. Mr. Revis was trying to stir his fellow workers up about this bonus program. That is protected by the National Labor Relations Act. Yeah, but the record doesn't say precisely what he was doing. I know one thing. If he was doing what you say, he might not have denied posting the letter. So why deny posting the letter? Well, the board reasonably found that if Mr. Revis is hauled into the boss's office and asked, did you post the letter, out of reasonable fear he denies it initially because he's concerned that the employer is angry about it, he's going to fire him. And the board – that was the board finding here. Yeah, but in that same interview when he denied it, he admitted it, didn't he? Right. And the employer hands him the paycheck and says, you're fired. Right? There couldn't be any – The difficulty with the post of the record, and that's what I don't know, the company, so far as the company was concerned, they got the injunction because of certain threats he'd made to certain workers, and they wanted him off. Well, Your Honor, had the board found he made threats, there would have been no preemption. But what the board found after hearing was that the claim that the company made that threats were made was false. The board found its assertion that Revis threatened employees and supervisors has been found to be false and unlawfully motivated. Nobody's disturbed at finding that that claim of threats was false, motivated, was done to protect their decision to discharge. So once the board finds it was false, fraudulent, never happened, after hearing all the evidence, then it's clear that the company knew from the beginning that they were false, made them up to protect its discharge. Who were the – I'm having a little trouble with the time. Who were the parties in the State court? Well, the parties are reflected on the injunction, and that's a little bit confusing. The injunction is – I was containing the record several places, but because the judge – first of all, it's confusing because the judge used the wrong form. He used a family law form that had nothing to do with this. But if you look at the injunction, which is at the excerpt of record at page – excerpt of record 39, the party is Jim Stewart, general manager, versus Ramon Revis. That's at page 39 of the excerpt of record. Well, it's the – it's the employer and the – And the worker. And the worker. Yeah, the poor worker gets in front of this. But the injunction extended to Jim Stewart and to Donnie Scott and Gail Lucas. Okay. And when did the union get involved? Well, the union filed – it's not clear from the record. I'm not sure. But the union filed the NLRB charge itself on that day, but there was really no active organizing effort in the sense the union hadn't filed a petition for representation. They were sniffing around, and Revis got to the union. The union filed the charge. And we filed the charge for the union on that day, and it went down its merry course from there. Okay. All right. Does that? Yeah. Thank you. That's helpful. Thank you. You have used your hand. Thank you. May it please the Court, Dan Blitz for the Labor Board. The Board respectfully submits that the central issue in this case is the fact that Mr. Revis engaged in protected concerted activities, namely the posting of a letter about the bonus system and talking to several employees about the bonus system and his concerns with that. What the company contends at bottom is that it was not aware of the concerted nature of Mr. Revis's activity of protesting the bonus system. And the company's argument is flawed for several reasons. First, it's reading the Board's decision myopically. The Board in its first paragraph, second paragraph, affirmed the ALJ's findings. Those findings are part of the decision. The Board added to, amplified those findings, the fact that during a termination meeting with Mr. Stewart, the man in charge of this facility, Mr. Stewart asked Revis whether anybody else agreed with the letter criticizing the bonus system. Mr. Revis said, yes, 50 to 60 employees agreed with this. The Board adopted the judge's finding discrediting Mr. Stewart. Mr. Stewart denied that he thought that Mr. Revis was telling the truth when he said this, but this was a credibility resolution, and in no way has the company met its very heavy burden of showing that the credibility finding discrediting the testimony of Mr. Stewart, and I might add, Mr. Donnie Scott, was irrational and not entitled to deference. The second point the company disputes is the question of motive. And here again, its argument is off base. The Board adopted the judge's finding that the company was motivated in substantial part to terminate Mr. Revis because of his posting of the letter and his engaging in protected concerted activities. The Board expressly noted that the judge's analysis was consistent with the leading case in this area, Myers Industry. Motive is, I would submit, easily found here. We have, to start with, as I pointed out, the awareness on the part of the company about the nature of the activities, the fact that Mr. Revis engaged in these activities, and the rather exquisite timing of this whole matter. In fact, just hours after hearing about the letter and asking employees about it and finding out that Mr. Revis was potentially, at least, or indeed the author, Mr. Revis was told to come into the employer's, the general manager's office, where he met with Mr. Scott. That's very quick timing, Your Honor. During the course of this conversation, Mr. Scott asked Mr. Revis questions about the letter. Understandably, he was hesitant to answer these, but he did say that he agreed with it. Mr. Revis then also said, you can't fire me for that reason. And Donnie Scott said, well, I don't like the way you work. Now can I fire you? That's a virtual admission about what was going on here. There's also testimony in the record, I think it was from Mr. Stewart, that Mr. Revis was a hard worker. So that reason just doesn't hold water. Furthermore, I mean, and the fatal flaw here is that the judge and the board affirmed the judge's finding that the company's proffered reason for this discharge was pretentious. It was utterly false. The reason, according to the company, as stated by its managers, Stewart and Scott, was that Mr. Revis threatened people with bodily harm. The judge found that this was not true, that the quote, unquote, threat that occurred during Mr. Revis's conversation with Mr. Stewart was a, quote, threat to file a lawsuit and that Mr. Revis's denials that he made any threats of bodily harm were credible. Moreover, that discrediting of the company's proffered reason further supports the board's finding that the discharge was, in fact, motivated for unlawful reason. At the end of the day, the company's challenge to this 881 finding is really reduced to a quarrel with credibility findings. As I've said earlier, though, that's a heavy burden for it to meet. The judge here expressly noted that he took into account the demeanor of the witnesses and pointed out that the company witnesses were not credible. The company argues that the judge somehow erred in discrediting the notes of a human resource official named Gail Lucas. Ms. Lucas passed away sometime during the course of these proceedings, and the judge basically found that her notes, which he basically explained, they were utterly self-serving and didn't meet the normal attributes of trustworthiness found in business records. So in no way has the company, you know, met its high burden of showing that the judge's note was an error. That ultimately is what is at stake here, Your Honor, the right of this individual to a reinstatement remedy and back pay. I understand that. What I'm not quite understanding is with respect to the preemption issues, what is at stake. Okay. That is the second issue, Your Honor. Ford submits that it correctly found in the circumstances of this case, and we acknowledge there's a fine line here in describing what happened, that the better course here, given the nature of the State court restraining order, was to let the proceedings play out, basically. At the time the Board found that Mr. Revis's was, quote, conduct was clearly protected, the portions of the State court restraining order, which incidentally I believe looks like it had expired about in January 2002, were preempted because they conflicted with the Board's reinstatement remedy. In other words, the portions of the State court restraining order that were in effect that barred Mr. Revis from coming on the premises or talking to employees during working hours, these had to yield to the Board's reinstatement. At the preemption doctrine that we're dealing with here, that's what is confusing me. Is it the preemption because of a conflict in remedies, or is it the preemption because of the exercise of jurisdiction by the NLRB, which is a different case? I see your point, Your Honor, and the way I was using preemption was a little loose in that sense. It was there was a conflict of remedy. At that point, the Board had found that Mr. Revis's conduct was clearly protected. Given that, the conflicting portions of the State court restraining order had to yield, backing up, and I'll call it pure preemption, the pure preemption argument. It's been said that Lowman's Plaza supplies the relevant framework of analysis to this issue, and the union would argue that under that case, I think, as I understand its argument, the Board's the State court restraining order was preempted at the point upon which the general counsel issued his unfair labor practice complaint alleging that Mr. Revis had been unlawfully discharged. The original complaint issued in March 1999, an amended complaint issued in September 1999, the amended complaint referred back to the March 1999 complaint, insofar as it said at that point, at the point the initial complaint issued, this lawsuit, this State court restraining order, this TRO, which blossomed into a full-fledged restraining order, was preempted. Per Lowman's Plaza, there are certain things, then, that would have come into play. When the complaint issued. When the complaint issued. It's the post-complaint pursuit of a lawsuit. We're not talking about the pre-complaint pursuit of a lawsuit, as I understand it, because the judge found, and nobody is arguing, that there was a retaliatory motive at stake here. After all, the State court found that the allegations were meritorious in that sense. Under Lowman's Plaza, just talking about what could have happened, the lawsuit that had been say it was maintained past the point of issuance of the complaint could be found to constitute an independent violation of Section 8A1 because it would reasonably tend to coerce the organizing activities or employees from engaging in protected concerted activities. But that is not that case, and that's not that case because Lowman's Plaza involved a lawsuit designed to stymie protected activity. This lawsuit was addressed, in essence, in Mr. Rivas' unprotected activities, namely, threats of some sort. Threats of some sort that the Board, down the road, discredited, but at the point at which this lawsuit was filed, it did contain certain allegations of that nature. And according to the Board, that took this case out of the realm of Lowman's Plaza. And that's why this case is unusual, I guess, because there was this – there was no union activity on its face in any of this, and it's a question of the motivation and whether – and that was not – that was – that was pretty hotly disputed. And the union wasn't involved until it got into the – into the charge before the NLRB. It's not a union case. Right. There's no allegation of 8A3 conduct, if I understand your question. It's simply an 8A1 case involving an individual's concerted activity for mutual aid or protection. Right. It's right to take group complaints up the chain of managers. So what the Board did in this admittedly, you know, perhaps unique circumstance said that to apply Lowman's Plaza rigidly would fly in the face of court precedent that, after all, you know, it's a compelling interest for a State to enjoy acts of – enjoying acts of violence, threats, intimidation, things of that sort. The better course, then, in the eyes of the Board was to, as I said, let the procedures run their course. And at the time, it explained that there was a conflict of remedies, you know, tell – order the company to petition the State court to withdraw the conflicting portions. That is what the – Counsel? Yes, Your Honor. What case authority supports that approach? The approach under which the Board ordered the company to petition for the withdrawal of the offending provisions, Your Honor. What case authority supports the approach of waiting until the remedy is defined and then determining whether or not there's a conflict of remedies as opposed to addressing a pure preemption as you phrased it? To my knowledge, Your Honor, this is a novel issue. The authority under which the Board ordered the company to petition the State court can be found from Lowman's, which cites Supreme Court case law that when activity is clearly protected, at that point, the Board's remedies obviously trump, as a matter of supremacy, the conflicting State court remedies. In other words, for the Board's remedies of reinstatement, letting this individual back onto the premises to be effectual, something had to give, and that's found in Lowman's Plaza, which cites to Sears, Roebuck, and Garmin. Right. But don't those speak in terms of charges as opposed to remedies or complaints as opposed to remedies? Primarily, Your Honor, but they also speak to conduct that is – there's a distinction between conduct that's arguably protected or arguably prohibited, and a distinction is drawn between that and conduct that is clearly protected or clearly prohibited. As I understand it, given that the Board's decision ultimately found the conduct that Mr. Rivas engaged in was clearly protected, there's authority in those – that line of cases that the Board's remedies trump the offending provisions of the State court lawsuit. Summing up, Your Honors, as I said earlier, this case is at bottom about an individual's entitlement to reinstatement and back pay merely because he engaged in protected concerted activities. The record amply supports the Board's finding that the company was unlawfully motivated in discharging this individual. Thank you.  I have Judge Rawlinson's question in mind. If I may, I'd like to touch on a couple of other points first and then deal with that. Could you please tell me, first of all, where that case is cited in your brief? There are five briefs in this case. Your brief. Yes. It's cited in the Board's brief and it's cited in our reply brief. Your gray brief? Yes. What date was that filed? September 21st, 2005 brief? Yes. Okay, what page? I haven't found it yet. Let me find it. I didn't look while I was sitting there because I was listening to the argument. You know, I'm having trouble finding where it is. Counselor, when I asked you the question, you specifically represented that it was in your brief. I hope you understand that you hurt your credibility if you make those representations and we've read the briefs and it's not there. The Board is the one that cited it first.  Our reply brief is the one that was cited first. Our reply brief endorsed what the Board said. I think the Board's brief either cited Wilkie Romero or cited a case that relied upon Wilkie Romero. At this point, I can't recall that clearly. I don't recall if our brief cited the case of Wilkie Romero, but it cited the legal principle and referred back to the Board's brief in the cases, I believe it referred back to the cases that the Board had relied upon. And remember as well, this is a jurisdictional issue. The Wilkie Romero case is very clear about jurisdictions. That, at least, I have at my fingertips. That is, the Court's discussion at pages 665 to 666, 456 U.S. 645, where the Supreme Court said the Court of Appeals was without jurisdiction to consider the question. Judicial review is barred by Section 10E, which provides no objection that has not been urged before the Board shall be considered by the Court. And then the Supreme Court said, quote, Wilkie could have objected to the Board's decision in the petition for reconsideration or rehearing. The failure to do so prevents consideration of the question by the courts. I'm sorry, Your Honor, I cannot put my finger on exactly where that comes out in the briefing, but it's there. You know, the concern I have as I listen to your argument and as I've listened to all of the arguments, wouldn't we have to do a lot of fact-finding to get to the On the jurisdictional question? Yes. I don't think so. The question is whether this issue, the question as Mr. Rosenfeld poses it, is whether this issue ever was presented to the Board. And he argued in his brief that it was. And where he said it was presented to the Board was in the General Counsel's opposition to our exceptions to the ALJ's decision. And he's wrong. It was not presented to – and by the way, that argument that Mr. Rosenfeld made is at page 7 of his reply brief. That's how – that's how he proposes to say he can get to the Court, because it was already presented to the Board in that brief. But the issue in that brief was whether the State court lawsuit was preempted as of the issuance of the administrative complaint. Okay. You know, we're way over time. Are there further questions that anyone wishes to ask? No. All right. Thank you. Thank you.
judges: Schroeder, Farris, Rawlinson